## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JORDAN BRESLOW,

      Plaintiff,

      v.

METROPOLITAN LIFE INSURANCE
COMPANY,

      Defendant.

Civil Action No. 20-cv-4896

### Amended Complaint – Jordan Breslow v. Metropolitan Life Insurance Company

Metropolitan Life Insurance Company (henceforth "MetLife) stands in breach of contract in regard to a life insurance contract issued to my mother, the late Donna Breslow (Date of Birth 03/03/1961), for which I was sole beneficiary. MetLife violated the agreed upon terms of a binding life insurance contract and failed to honor its commitments and pay the full death benefit owed. The laws of the Commonwealth of Pennsylvania dictate the definitions of breach of contract in commercial contracts and provide remedies. Additionally, MetLife has an implied duty of good faith in its insurance transactions. MetLife, by its errors, has acted in bad faith. Pennsylvania law allows for recovery of damages in a breach of contract action. Damages are compensation for financial losses and other injuries suffered by the breach of contract. MetLife's breach of contract has produced numerous losses; 1) The loss of the full economic benefit of the total sum owed under the bound contract 2) During the time my mother was alive she was in the process of selling her life insurance contract to a life settlement firm to obtain funds to assist in her medical care. MetLife's errors negated the sale and deprived her of economic enrichment 3)

MetLife's breach of contract and bad faith has been very emotionally stressful and traumatic for me and has exacerbated my already strained mental state. I'm seeking $277,219.00 in unpaid life insurance benefits to rectify the breach of contract issue and $222.186.01 in unrefunded premiums and damages in response to the losses incurred as a result of breach. Please see the attached exhibits. Additionally, no probate as been necessary but I serve as executor of my mother's estate.

My mother, the late Donna A. Breslow, was an employee of State Street Bank & Trust (Boston, MA) from May 1998 (including its predecessor Princeton Financial Services for which her years of service were reflected) until her separation and termination for long term disability in September 2019. Donna died April 9th, 2020. Metropolitan Life Insurance Company ("MetLife") was her Group Life Insurance Carrier at State Street. Upon separation from State Street she exercised her right to convert his Group Life Certificate Coverage to Individual permanent Life Insurance Coverage on a guaranteed issue basis and at guaranteed issue rates. The Life Insurance Contract (Policy number: ending 2032 A) issued with an effective date 11/01/2019 and taken and paid for on 12/30/2019 with a face amount and a death benefit of $348,000.00, with a quarterly premium of $3,977.72.

Subsequently, MetLife without notice stated that they should not have let her convert the full coverage amount. They retroactively invalided ending #2032 A and denoted it on their books as "Unplaced Issue - Prem Pay" and issued insufficient refunds of $64.24 (see attached copies of processed checks) on two (2) occasions via US mail. They then placed a new Life Insurance Contract (Policy number: ending 0347 A) on its books with an effective date of 11/01/2019 and a face amount and net death benefit of $70,781.00 And a quarterly premium of $978.37.

Under Pennsylvania law pertaining to insurance transactions once an insurance contract is issued and bound it must be honored. Unless there were "material misrepresentations" (i.e. misstatement of age or sex) which is not the case. Legal precedent exists to support this concept. In *Collister v. Nationwide Life Ins. Co.*(479 Pa. 579 (1978) a beneficiary sued and won in a case before the Supreme Court of Pennsylvania to get Nationwide Life Insurance Company to pay full benefits in a case where a life insurance policy was bound and paid for but the insured died before the underwriting could be completed. This case proves the relatively ironclad principle that once a policy is bound and paid for it must be honored as is, regardless of insurer errors or missteps.

Additionally, given the guaranteed issue basis and a length of service beyond two (2) years on the Group Certificate, the original policy met the criteria for being regarded as Incontestable under the Pennsylvania Insurance Code. I wrote and sent via FEDEX two letters with accompanying documents to MetLife's legal counsel, Stephen Gaunter (Executive Vice President & General Counsel) and received a limited and unsatisfactory response.

MetLife's actions in not promptly paying this claim in full are shameful. My mother was suffering from Stage 4 Metastatic Breast Cancer and deserved better from her insurer. In some of my communications with MetLife they have stated they feel that this is an error made by the benefits coordinator at State Street Bank & Trust in regard to the wrong conversion amount. The fact is all errors fall on MetLife to resolve them before issuing and accepting payment for a policy. That ship has sailed. Anecdotally, as an insurance producer I have seen numerous other insurers make similar errors and honor their word and learn from their errors. Additionally, MetLife's sales practices come into question. Instead of providing a simple forum for group life participants to convert their coverage, MetLife employs the Plan Smart Group Conversion Sales

Lead Program. MetLife sells the names of group life participants who have separated and are eligible for conversion to Massachusetts Mutual Life Insurance Company (though contracted to sell MetLife products) agents for the cost of a monthly subscription somewhere in the neighborhood of I believe around $150 a month. I was a MassMutual career agent from 2016 to 2019 and witnessed this program firsthand. Because group conversions pay small commissions around 6% of target premium and new premiums pay 50 to 100% of target premium agents frequently put conversions on the back burner as was the case with my mother. She was fobbed off on the administrative part of a sales team, see attached exhibits. Being terminally or chronically ill precluded my mother from obtaining a new insurance policy and thus the agents were not interested in servicing her needs completely. Additionally, because it's a sales program this agency that handled the conversion was based in Long Island New York and deprive my mother of local service despite the fact that there are MetLife and MassMutual agencies in the Philadelphia area. MetLife in 2017 divested its agency force and sold them to Massachusetts Mutual Life insurance Company owing to regulatory matters and the foundation of Bright House Financial Group.  It is this callous disregard on MetLife's part and desire to monetize every aspect of a group conversion that likely leads to errors. Such disingenuous sales practices also constitute bad faith in an insurance transaction.

In closing I've spent a great deal of my time and some resources in bringing this case forward and representing myself. That too I believe deserves to be recompensed. When one loses a parent when they are in their 20s after spending years nursing them through a lengthy battle with cancer it's your hope and expectation that a company with hundreds of billions of dollars in its general account would we do the honorable thing and honor the contract as written. MetLife can expound about errors and regrets, but the fact is they readily admit to these errors the time to

correct them was before the policy was bound and paid for. Now they must honor their word at the full $348,000 regardless of what happened before the contract was issued from a group conversion. I shouldn't have to fight MetLife tooth nail and claw on this but sadly that is where we are. As a life insurance producer this astounds me as I've never seen a life insurance company act so callously and fight a valid claim so vehemently. Not to editorialize or overemphasize but this behavior on the part of MetLife and denying and fighting a valid claim is an affront to consumer rights.

Case 2:20-cv-04896-ER   Document 20   Filed 11/23/20   Page 6 of 37
Case 2:20-cv-04896   Document 1   Filed 10/05/20   Page 6 of 38
EX 79

COPY

23.

BRANCH/AGENCY 07H 250

#  MetLife

## Metropolitan Life
## Insurance Company
### A Mutual Company Incorporated in New York State

Metropolitan Life Insurance Company will pay the amount of insurance and provide the other benefits of this policy according to its provisions.

_President_

_Secretary_

| | |
|---|---|
| Insured | **DONNA A BRESLOW** |
| Face Amount of Insurance | **$348,000**   **AS OF NOVEMBER 1, 2019** |
| Policy Number | ▓▓▓▓ 2 032 A |
| Plan | **Life Paid-Up at 100** |

## Life Paid-Up At 100 Policy

Life insurance payable when the insured dies.

Premiums payable for a stated period.

Annual dividends.

**10-Day Right to Examine Policy—Please read this policy. You may return this policy to Metropolitan or to the sales representative through whom you bought it within 10 days from the date you receive it. If you return it within the 10-day period, the policy will be void from the beginning. We will refund any premium paid.**

See Table of Contents and Company address on the last page.

**READ THIS POLICY CAREFULLY.** This policy is a legal contract between the policy owner and Metropolitan Life Insurance Company.



8-90 (95)

AAASGP

339900912
07H CRUMP LIFE I



### POLICY SPECIFICATIONS

DATE OF POLICY  . . . . . . . .  NOVEMBER 1 2019

INSURED'S AGE  . . . . . . . . .  59


OWNER  . . . . . . . . . . . . .  THE INSURED

BENEFICIARY. . . . . . . . .        JORDAN T BRESLOW
(SEE APPLICATION FOR CONTINGENT BENEFICIARY)


POLICY CLASSIFICATION  . . . . .   STANDARD

INSURED

DONNA A BRESLOW

FACE AMOUNT
OF INSURANCE..   $348,000                    ███ 2 032 A    . . POLICY NUMBER

PLAN . . . . . .   LIFE PAID-UP AT 100              07H     250


SEE THE FOLLOWING PAGE 3 (CONT'D) FOR THE PREMIUM SCHEDULE

339900912



POLICY NUMBER ████ 2 032 A       INSURED DONNA A BRESLOW

PREMIUM SCHEDULE
PREMIUMS ARE DUE ON DATE OF POLICY AND EVERY
3 MONTH(S) AFTER THAT DATE

|  | PREMIUM AMOUNT | YEARS PAYABLE | CLASSI-FICATION |
|---|---|---|---|
| LIFE INSURANCE | $3,977.72 | 41 | STD |

TOTAL PREMIUM OF       $3,977.72

000 00912 940

**COPY**

### TABLE OF VALUES

APPLICABLE TO A POLICY WITHOUT PAID-UP ADDITIONS, DIVIDEND ACCUMULATIONS OR POLICY LOAN

INSURED        DONNA A BRESLOW

INSURED'S AGE -    59

POLICY NUMBER     2 032 A

PLAN -   LIFE PAID-UP AT 100

DATE OF POLICY  NOVEMBER 01 2019

FACE AMOUNT OF INSURANCE IS $        348,000

| VALUE DATE | GUARANTEED CASH VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INSURANCE YEARS | DAYS |
|---|---|---|---|---|
| MAY  1, 2020 | $      0.00 | $      0 | 00 | 060 |
| NOV. 1, 2020 | 696.00 | 1,740 | 00 | 079 |
| NOV. 1, 2021 | 1,044.00 | 2,436 | 00 | 107 |
| NOV. 1, 2022 | 10,092.00 | 20,532 | 02 | 156 |
| NOV. 1, 2023 | 19,140.00 | 37,932 | 04 | 011 |
| NOV. 1, 2024 | 28,536.00 | 54,984 | 05 | 138 |
| NOV. 1, 2025 | 37,932.00 | 71,340 | 06 | 179 |
| NOV. 1, 2026 | 46,980.00 | 85,956 | 07 | 116 |
| NOV. 1, 2027 | 56,376.00 | 100,572 | 08 | 001 |
| NOV. 1, 2028 | 66,120.00 | 115,188 | 08 | 209 |
| NOV. 1, 2029 | 75,516.00 | 128,412 | 08 | 354 |
| NOV. 1, 2030 | 85,260.00 | 141,636 | 09 | 103 |
| NOV. 1, 2031 | 95,004.00 | 153,816 | 09 | 180 |
| NOV. 1, 2032 | 104,748.00 | 165,996 | 09 | 225 |
| NOV. 1, 2033 | 114,492.00 | 177,132 | 09 | 248 |
| NOV. 1, 2034 | 124,236.00 | 188,268 | 09 | 253 |
| NOV. 1, 2035 | 133,632.00 | 198,012 | 09 | 233 |
| NOV. 1, 2036 | 143,376.00 | 208,104 | 09 | 211 |
| NOV. 1, 2037 | 152,772.00 | 217,152 | 09 | 168 |
| NOV. 1, 2038 | 162,516.00 | 226,548 | 09 | 125 |
| NOV. 1, 2039 | 171,564.00 | 234,900 | 09 | 059 |
| AT AGE 60 * | 696.00 | 1,740 | 00 | 079 |
| AT AGE 65 * | 37,932.00 | 71,340 | 06 | 179 |

ON REQUEST WE WILL PROVIDE VALUES FOR DATES NOT SHOWN.

GUARANTEED INTEREST RATE -  4% A YEAR

MORTALITY TABLES - COMMISSIONERS 2001 STANDARD ORDINARY COMPOSITE MORTALITY TABLE (80% MALES, 20% FEMALES), AGE NEAREST BIRTHDAY

* VALUE DATE IS    NOVEMBER 01, FOLLOWING INDICATED AGE

8-90 (95)

4

## Understanding This Policy



"You" and "your" refer to the owner of this policy.

"We," "us" and "our" refer to Metropolitan Life Insurance Company.

The "insured" named on page 3 is the person at whose death the insurance proceeds will be payable.

The "Face Amount of Insurance" is shown on page 3.

Policy years and months are measured from the date of policy. For example, if the date of policy is May 5, 1990, the first policy year ends May 4, 1991.

To make this policy clear and easy to read, we have left out many cross-references and conditional statements. Therefore, the provisions of the policy must be read as a whole. For example, our payment of the insurance proceeds (see page 5) depends upon the payment of premiums (see page 7). Otherwise, the provisions for non-payment of premiums will apply (see page 7).

To exercise your rights, you should follow the procedures stated in this policy. If you want to request a payment, change a beneficiary, change an address or request any other action by us, you should do so on the forms prepared for each purpose. You can get these forms from your sales representative or your local Metropolitan office.

## Payment When Insured Dies

When the insured dies, an amount of money, called the insurance proceeds, will be payable to the beneficiary. The insurance proceeds are the total of:

* The Face Amount of Insurance.

PLUS

* Any insurance on the insured's life which may be provided by riders to this policy.

* Any insurance bought with dividends.

* Any dividends left with us to earn interest.

* Any dividend which we may credit at death.

* Any part of a premium paid for coverage beyond the policy month in which the insured dies.

MINUS

* Any premium due (not more than one month's part of the premium).

* Any policy loan and loan interest.

We will pay the insurance proceeds to the beneficiary after receipt of proof of death and a proper written claim.

## Payments During Insured's Lifetime

**Dividends**   Every year we determine an amount to be paid to our policyholders as dividends. We will determine the share, if any, for this policy and credit it as a dividend at the end of the policy year. We do not expect that any dividend on this policy will be paid until at least 2 years from its date.

You may choose to use dividends in any one of these ways:

1. *Paid-Up Additions* -- To buy more insurance on the insured's life.

2. *Dividend Accumulations* -- To be left with us to earn interest at the rate we set from time to time.

3. *Premium Payment* -- To be applied toward the payment of premiums. Any excess will be used to buy Paid-Up Additions.

4. *Cash* -- To be paid to you by check.

Your choice may be made on the application for your policy or in writing at a later date. If no choice has been made, we will provide paid-up additions unless you make a different choice within 3 months after a dividend is credited. If a dividend check has not been cashed within one year, a choice of paid-up additions will be deemed to have been made.

101-87
5
AAAATA

## Payments During Insured's Lifetime (Continued)



**Cash Value**   Your policy has a cash value while the insured is alive. The cash value is the total of:

* The guaranteed cash value, as defined below.

PLUS

* The cash value of any insurance bought with dividends.

* Any dividends left with us to earn interest.

• Any part of a premium paid for coverage beyond the policy month in which you surrender this policy.

MINUS

• Any policy loan and loan interest.

There are several ways you can use all or part of the cash value:

1. Take a policy loan from us.

2. Take the cash value of any insurance bought with dividends.

3. Take any dividends left with us to earn interest.

4. Surrender the policy to us for its full cash value.

Or, if you stop paying premiums, the cash value may be used to continue insurance for a limited time or for the insured's lifetime at a reduced amount.

**Guaranteed Cash Value**   If all due premiums have been paid, the guaranteed cash value is as shown in the Table of Values on page 4.

The guaranteed cash value of any paid-up insurance or any extended term insurance is as described under "Computation of Values" on page 8.

**Policy Loan**   You can get cash from us by taking a policy loan. If there is an existing loan you can increase it. The most you can borrow is the cash value at the end of the current policy year less any unpaid premiums for that year and loan interest to the end of that year. A loan may not be taken if extended term insurance is in effect (see page 7).

Loan interest is charged daily at the rate we set from time to time. This rate will never be more than the maximum allowed by law and will not change more often than once a year on the anniversary of the date of policy.

The rate of interest we set for a policy year may not be more than the higher of:

(a) The Published Monthly Average for the calendar month ending 2 months before the start of the policy year; or

(b) The rate we use to compute the guaranteed cash value of this policy for the policy year, plus 1%.

The Published Monthly Average means:

(a) Moody's Corporate Bond Yield Average--Monthly Average Corporates, as published by Moody's Investors Service, Inc. or any successor to that service; or

(b) If that average is no longer published, a substantially similar average, established by regulation issued by the insurance supervisory official of the state in which this policy is delivered.

If the maximum limit for a policy year is at least 1/2% higher than the rate set for the prior policy year, we may increase the rate to no more than that limit. If the maximum limit for a policy year is at least 1/2% lower than the rate set for the prior policy year, we will reduce the rate to at least that limit.

When a loan is made, we will inform you of the initial rate applicable to that loan. We will mail you advance notice if there is to be an increase in the rate applicable to an existing loan.

Loan interest is due at the end of each policy year. Interest not paid within 31 days after it is due will be added to the loan principal. It will be added as of the due date and will bear interest at the same rate as the rest of the loan principal.

**Loan Repayment**   You may repay all or part (but not less than $50) of a policy loan at any time while the insured is alive.



## Payments During Insured's Lifetime (Continued)

**Policy Termination**

Your policy will end whenever the amount of your policy loan plus loan interest is more than the sum of:

1. The guaranteed cash value;

2. The cash value of any insurance bought with dividends; and

3. Any dividends left with us to earn interest.

We will mail notice to you at least 31 days before termination. We will also mail notice to any assignee on our records. You can prevent termination by making sufficient repayment of the loan.

**Deferment**

We may delay paying the cash value for up to 6 months from the date we receive a request for payment. If we delay for 30 days or more, interest will be paid from the date we receive the request at the rate we set from time to time. We also may delay making a policy loan, except for a loan to pay a premium, for up to 6 months from the date you request the loan.

### Premiums

**Premium Payment**

The benefits of your policy depend on the payment of premiums when due. Premiums are payable, while the insured is alive, on or before their due dates as shown in the premium schedule on page 3. Premiums may be paid at our Home Office or any other office we designate or to your sales representative. A receipt signed by our President or Secretary and countersigned by the sales representative will be given for a premium paid to the sales representative.

You may change the frequency of payment with our approval.

You may ask us to pay premiums with a combination of yearly dividends, the cash value of any paid-up additions and/or any dividend accumulations. As long as these values are great enough, out-of-pocket premiums need not be paid to keep your policy in force.

**Grace Period**

After the first premium is paid, there will be a grace period of 31 days after each premium due date to pay the premium. If the insured dies during a grace period, the insurance proceeds will still be payable.

**Automatic Policy Loan**

Each premium which remains unpaid at the end of a grace period will be paid with an automatic policy loan if:

1. You ask us to do so in the application for your policy or in writing while no premium is due and unpaid; and

2. Your policy has enough cash value to pay the premium.

**Non-Payment of Premiums**

If any premium due before the first date shown under "Value Date" in the Table of Values on page 4 is not paid by the end of its grace period, your policy will end as of the due date of that premium. If any premium due on or after that date is not paid by the end of its grace period, the insurance coverage will continue for a limited time as extended term insurance. However, after premiums have been paid at least until the date at which a guaranteed cash value is first shown in the Table of Values on page 4, you may choose either reduced paid-up insurance or cash instead of extended term insurance.

1. *Extended Term Insurance--* The amount of the extended term insurance will be the total of:

    • The Face Amount of Insurance;

      PLUS

    • Any insurance bought with dividends.

    • Any dividends left with us to earn interest;

      MINUS

    • Any policy loan and loan interest.



## Premiums (Continued)

The policy will no longer be eligible for dividends and the policy loan provisions will no longer apply. Benefits provided by any riders will end. At the end of the term, this policy will be void.

2. *Reduced Paid-Up Insurance--* You may choose to continue insurance for the lifetime of the insured but for a reduced amount. This choice may be made at any time within 3 months after the due date of the first unpaid premium.

The policy will continue to be eligible for dividends and the policy loan provisions will continue to apply. Benefits provided by any riders will end.

3. *Cash--* Instead of continuing insurance coverage, you may surrender your policy for its cash value.

**Computation of Values**

The Table of Values on page 4 shows the guaranteed cash values, the amounts of reduced paid-up insurance and the periods of extended term insurance that we would provide. This table does not take into account any insurance bought with dividends, dividends left with us to earn interest, or policy loan and loan interest. Values not shown in the table are computed by the same method as that used for the values shown. The method of computation will be furnished on request.

A period of extended term insurance is measured from the due date of the first unpaid premium. We compute the length of extended term insurance or the amount of reduced paid-up insurance by applying the cash value as a net single premium as of the due date of the first unpaid premium. The insured's age for this purpose is the age on the date of the policy plus the number of years and full months from that date to the due date of the first unpaid premium. Any loans or cash paid to you during the grace period will not be included in the cash value applied.

At any time, the guaranteed cash value of any paid-up insurance or any extended term insurance is equal to the net single premium for such insurance at the insured's then attained age. The guaranteed cash value will not decrease during the first 3 months after the due date of the first unpaid premium. Also, the guaranteed cash value will not decrease for the first 31 days after the end of a policy year.

Guaranteed cash values, insurance benefits and net single premiums are computed on the basis of immediate payment of death claims and refund of premiums beyond the end of the month in which the insured dies. The guaranteed interest rate and mortality tables used are shown on page 4.

We have filed a detailed statement of the method of computation with the insurance supervisory official of the state in which this policy is delivered. The values under this policy are equal to or greater than those required by the law of that state.

**Reinstatement**

If you have stopped paying premiums but have not surrendered your policy for its cash value, you may reinstate the policy while the insured is alive if you:

1. Request reinstatement within 3 years of the due date of the first unpaid premium;

2. Provide evidence of insurability satisfactory to us;

3. Pay all overdue premiums to the date of reinstatement with compound interest at the rate of 6% a year; and

4. Repay any policy loan (plus interest) in effect on the due date of the first unpaid premium, plus any policy loan taken after that. Compound interest to the date of reinstatement will be charged on any unpaid loan at the applicable policy loan interest rate, as would have been charged if all due premiums had been paid.

Any cash value that your policy would have after reinstatement may be taken as a policy loan and used toward the payment required to make reinstatement.

After 3 years from the due date of the first unpaid premium, the policy may be reinstated subject to the conditions we set.

AAAATF

*COPY*

## Ownership and Beneficiary

**Owner**

As owner, you may exercise all rights under your policy while the insured is alive. You may name a contingent owner who would become the owner if you should die before the insured.

**Change of Ownership**

You may name a new owner at any time. If a new owner is named, any earlier choice of a contingent owner, beneficiary, contingent beneficiary or optional income plan will be canceled, unless you specify otherwise.

**Beneficiary**

The beneficiary is the person or persons to whom the insurance proceeds are payable when the insured dies. You may name a contingent beneficiary to become the beneficiary if all the beneficiaries die while the insured is alive. If no beneficiary or contingent beneficiary is named, or if none is alive when the insured dies, the owner (or the owner's estate) will be the beneficiary. While the insured is alive, the owner may change any beneficiary or contingent beneficiary.

If more than one beneficiary is alive when the insured dies, we will pay them in equal shares, unless you have chosen otherwise.

**How to Change the Owner or the Beneficiary**

You may change the owner, contingent owner, beneficiary or contingent beneficiary of this policy by written notice or assignment of the policy. No change is binding on us until it is recorded at our Home or a Head Office. Once recorded, the change binds us as of the date you signed it. The change will not apply to any payment made by us before we recorded your request. We may require that you send us this policy to make the change.

**Collateral Assignment**

Your policy may be assigned as collateral. All rights under the policy will be transferred to the extent of the assignee's interest. We are not bound by any assignment unless it is in writing and is recorded at our Home or Head Office. We are not responsible for the validity of any assignment.

## General Provisions

**The Contract**

This policy includes any riders and, with the application attached when the policy is issued, makes up the entire contract. All statements in the application will be representations and not warranties. No statement will be used to contest the policy unless it appears in the application.

**Limitation on Sales Representative's Authority**

No sales representative or other person except our President, Secretary, or a Vice-President may (a) make or change any contract of insurance; or (b) change or waive any of the terms of this policy. Any change must be in writing and signed by our President, Secretary, or a Vice-President.



We will not contest the validity of your policy after it has been in force during the insured's lifetime for 2 years from the date of policy, except for nonpayment of premiums.

**Interest Rate**

Where this policy provides that interest on payments we make will be at a rate we set, that rate will never be less than 3% a year.

**Age and Sex**

If the insured's age or sex on the date of policy is not correct as shown on page 3, we will adjust the benefits under this policy. The adjusted benefits will be those which the premium paid would have bought at the correct age and sex.

## Exclusion

**Suicide**

The insurance proceeds will not be paid if the insured commits suicide, while sane or insane, within 2 years from the date of policy. Instead, we will pay the beneficiary an amount equal to all premiums paid, without interest, less any loan and loan interest.

102-87

AAAATH



## Methods of Payment

Unless otherwise requested, we may pay the insurance proceeds when the insured dies, or the cash value on surrender of the policy in one sum or by placing the amount in an account that earns interest. The payee will have immediate access to all or any part of the account.

If requested, we will apply the amount under one or more of the following payment plans.

**Option 1.** *Interest Income*-- The amount applied will earn interest which will be paid monthly. Withdrawals of at least $500 each may be made at any time by written request.

**Option 2.** *Instalment Income for a Stated Period*-- Monthly instalment payments will be made so that the amount applied, with interest, will be paid over the period chosen (from 1 to 30 years).

**Option 2A.** *Instalment Income of a Stated Amount*-- Monthly instalment payments of a chosen amount will be made until the entire amount applied, with interest, is paid.

**Option 3.** *Single Life Income--Guaranteed Payment Period*-- Monthly payments will be made during the lifetime of the payee with a chosen guaranteed payment period of 10, 15 or 20 years.

**Option 3A.** *Single Life Income--Guaranteed Return*-- Monthly payments will be made during the lifetime of the payee. If the payee dies before the total amount applied under this plan has been paid, the remainder will be paid in one sum as a death benefit.

**Option 4.** *Joint and Survivor Life Income*-- Monthly payments will be made jointly to two persons during their lifetime and will continue during the remaining lifetime of the survivor. A total payment period of 10 years is guaranteed.

**Other Frequencies and Plans** Instead of monthly payments, you may choose to have payments made quarterly, semiannually or annually. Other payment plans may be arranged with us.

**Choice of Payment Plans** A choice of payment plan for insurance proceeds made by you in writing and recorded by us while the insured is alive will take effect when the insured dies. All other choices of payment plans will take effect when recorded by us or later, if requested. When a payment plan starts, we will issue a contract which will describe the terms of the plan. We may require that you send us this policy. We may also require proof of the payee's age.

Payment plans may be chosen:

1. By you during the lifetime of the insured.

2. By the beneficiary within one year after the date the insured died and before any payment has been made, if no choice was in effect on the date of death.

A choice of payment plan will not take effect unless each payment under the plan would be at least $50.

**Limitations** If the payee is not a natural person, the choice of a plan will be subject to our approval. An assignment for a loan will modify a prior choice of payment plan. The amount due the assignee will be payable in one sum and the balance will be applied under the payment plan.

Payments may not be assigned and, to the extent permitted by law, will not be subject to the claims of creditors.

**Payment Plan Rates** Amounts applied under the interest income and instalment payment plans will earn interest at a rate we set from time to time.

Life income plan payments will be based on a rate set by us and in effect on the date the insurance proceeds or cash value becomes payable.



### Methods of Payment (Continued)

**Minimum Payments under Payment Plans–** Monthly payments under Options 2, 3, 3A and 4 for each $1,000 applied will not be less than the amounts shown in the following Tables.

**Option 2.** *Instalment Income for a Stated Period*
Monthly Payments for each $1,000 Applied

| Years Chosen | Minimum Amount of Each Monthly Payment | Years Chosen | Minimum Amount of Each Monthly Payment | Years Chosen | Minimum Amount of Each Monthly Payment |
|---|---|---|---|---|---|
| 1 | $84.47 | 11 | $8.86 | 21 | $5.32 |
| 2 | 42.86 | 12 | 8.24 | 22 | 5.15 |
| 3 | 28.99 | 13 | 7.71 | 23 | 4.99 |
| 4 | 22.06 | 14 | 7.26 | 24 | 4.84 |
| 5 | 17.91 | 15 | 6.87 | 25 | 4.71 |
| 6 | 15.14 | 16 | 6.53 | 26 | 4.59 |
| 7 | 13.16 | 17 | 6.23 | 27 | 4.47 |
| 8 | 11.68 | 18 | 5.96 | 28 | 4.37 |
| 9 | 10.53 | 19 | 5.73 | 29 | 4.27 |
| 10 | 9.61 | 20 | 5.51 | 30 | 4.18 |

To determine the minimum amount for quarterly payment, multiply the above monthly payment by 2.99; for semiannual by 5.96; and for annual by 11.84.

**Option 3.** *Single Life Income--* Guaranteed Payment Period
Minimum Amount of each Monthly Payment for each $1,000 Applied

**Option 3A.**
*Single Life Income--*
Guaranteed Return
Minimum Amount of each Monthly Payment for each $1,000 Applied

| Payee's Age | Guaranteed Payment Period | | | | | | Minimum Amount of each Monthly Payment for each $1,000 Applied | |
|---|---|---|---|---|---|---|---|---|
| | 10 years | | 15 years | | 20 years | | | |
| | Male | Female | Male | Female | Male | Female | Male | Female |
| 50 | $4.29 | $3.94 | $4.23 | $3.91 | $4.15 | $3.86 | $4.11 | $3.82 |
| 55 | 4.72 | 4.29 | 4.62 | 4.23 | 4.47 | 4.15 | 4.47 | 4.11 |
| 60 | 5.29 | 4.73 | 5.09 | 4.62 | 4.79 | 4.47 | 4.92 | 4.47 |
| 65 | 6.02 | 5.29 | 5.60 | 5.09 | 5.09 | 4.81 | 5.48 | 4.93 |
| 70 | 6.86 | 6.02 | 6.08 | 5.63 | 5.31 | 5.13 | 6.18 | 5.53 |
| 75 | 7.71 | 6.92 | 6.46 | 6.16 | 5.44 | 5.36 | 7.05 | 6.32 |
| 80 | 8.48 | 7.89 | 6.70 | 6.55 | 5.49 | 5.47 | 8.15 | 7.36 |
| 85 and over | 9.07 | 8.74 | 6.82 | 6.77 | 5.51 | 5.50 | 9.54 | 8.70 |

**Option 4.** *Joint and Survivor Life Income--* Guaranteed Period of 10 years
Minimum Amount of Each Monthly Payment for each $1,000 Applied

| Age of Both Payees | One Male and One Female | Two Males | Two Females |
|---|---|---|---|
| 50 | $3.64 | $3.79 | $3.54 |
| 55 | 3.93 | 4.11 | 3.80 |
| 60 | 4.30 | 4.55 | 4.13 |
| 65 | 4.80 | 5.13 | 4.57 |
| 70 | 5.47 | 5.90 | 5.17 |
| 75 | 6.33 | 6.80 | 6.00 |

On request, we will provide additional information about amounts of minimum payments.

*COPY*

Name of Insured/Annuitant/Applicant
DONNA A BRESLOW
Agency
250
District/Branch
07H

Application Number:

Date of this Form
12/09/2019
Policy/Contract Number
_____2032

Application Amendment

**MetLife**

To ☒ Metropolitan Life Insurance Company
☐ Metropolitan Insurance and Annuity Company
☐ Security First Life Insurance Company

I amend the application referred to above, as follows:
The Face Amount is amended to $348,000.

**This application amendment** is part of the application referred to above and is subject to the agreements in that application. The application and this amendment are part of the policy/contract to which they are attached. To the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as shown above.

| WITNESS (Licensed Resident Agent) | Place | Mo. Day Yr. | Signature |
|---|---|---|---|
| Witness to Signature (A) | | | (A) Insured/Annuitant/Applicant |
| Witness to Signature (B) | | | (B) Spouse (if Spouse signed application) |
| Witness to Signature in (C) or (D) | | | (C) Owner (if other than (A) above) |

If Owner is a firm, corporation or trust, enter full name on (D)
line (C) and have one or more partners, officers or trustees   _____
sign on line (D), and give their titles.
                                                               _____

Return signed forms to :

NB PROCESSING CENTER - COMPLIANCE UNIT

0843-82-A PA (8-98)                                            CAAHVP

Case 2:20-cv-04896 Document 1 Filed 10/05/20 Page 24 of 68


COPY

**Metropolitan Life Insurance Company**

## ENDORSEMENT

This endorsement is part of the policy to which it is attached. It amends the policy as follows:

1. "A Mutual Company Incorporated in New York State" under the Company title on the first page is changed to "A Stock Company Incorporated in New York State".

2. The **Voting for Directors** provision on the last page and all references to voting rights are deleted.

*Jeanett A*

*Secretary*

COPY

# PENNSYLVANIA AFFILIATES AGREEMENT ENDORSEMENT

☐ Metropolitan Life Insurance Company
☐ Metropolitan Tower Life Insurance Company

The Company indicated above is referred to as "the Company".

If your Policy provides for a Date of Policy/Policy Date only, this Endorsement is a part of the policy as of the: Date of Policy; or Policy Date.

If your Policy provides for a Date of Policy/Policy Date and/or a Date of Issue/Issue Date, this Endorsement is a part of the policy as of the: Date of Issue; or Issue Date.

This Endorsement is subject to all applicable terms and provisions except as modified herein.

Each of the undersigned affiliated companies agrees, in accordance with the provisions of the Policy, to make its products, which are offered at the time the option to obtain a new policy is exercised, available to policyholders of the Company which issued this Policy.

The new policy will be issued by the Company, if the other undersigned affiliated companies are not in business at the time the option is exercised.

**Metropolitan Life Insurance Company**                    **Metropolitan Tower Life Insurance Company**

*President*          *Secretary*                    *President*          *Secretary*

E-E41-16-PA

*COPY*

**MetLife**

Policy Number _____

**Application for Life Insurance**

**Company** (Check the appropriate ONE.) ☐ Metropolitan Life Insurance Company ☐ Metropolitan Tower Life Insurance Company
The Company indicated in this section is
referred to as **'the Company'**.

### SECTION I - About the Proposed Insured

For Additional Insureds please complete the **Additional Insureds Supplement** form.

| First Name | Middle Name | Last Name |
|---|---|---|
| Donna | A | Breslow |

| Permanent Address | City | State | Zip |
|---|---|---|---|
| 112 Windsor Ave | Elkins Park | PA | 19027 |

| Country of Legal Residence | Date of Birth | E-Mail Address |
|---|---|---|
| USA | /1961 | Jordanbreslow93@gmail.com |

| Primary Phone Number | Alternate Phone Number | Preferred Time to Call | From ☐ AM ☐ PM | To ☐ AM ☐ PM | Sex ☐ Male ☒ Female |
|---|---|---|---|---|---|
| 215-206-356? | | | | | |

| Place of Birth | Social Security or Tax ID Number | Earned Annual Income | Net Worth |
|---|---|---|---|
| PA | | | |

☒ U.S. Driver's License   If not licensed, please indicate other form of ID: ☐ Passport ☐ Government Issued Photo ID

| Issuer of ID | ID Number | Issue Date (if any) | Expiration Date (if any) |
|---|---|---|---|
| PA | | | |

| Name of Employer | Employer City | State | ZIP | Position/Duties |
|---|---|---|---|---|
| Retired | | | | |

| **NON U.S. CITIZENS ONLY** - Country of Citizenship | Green Card/Visa Type | Expiration Date |
|---|---|---|
| | | |

| Country of Permanent Residence | ID Number | Years in the U.S. |
|---|---|---|
| | | |

### SECTION II - About the Owner   ⚠ Complete ONLY if the Owner is NOT the Proposed Insured.

☐ **OWNER - TRUST / BUSINESS ENTITY** - Name of Entity ____ Tax ID Number ____ Trustee / Owner State ____

☐ Trust  ☐ Business Entity  ☐ Charity  ☐ Qualified Pension Plan  📄 Complete the appropriate **required** form(s).

☐ **OWNER - OTHER INDIVIDUAL**

| First Name | Middle Name | Last Name |
|---|---|---|
| | | |

| Permanent Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Country of Legal Residence | Citizenship | Social Security or Tax ID Number | Date of Birth | Phone Number |
|---|---|---|---|---|
| | | | | |

| E-Mail Address | Earned Annual Income | Net Worth | Relationship to Proposed Insured |
|---|---|---|---|
| | | | |

Please indicate form of ID: ☐ U.S. Driver's License ☐ Passport ☐ Government Issued Photo ID

| Issuer of ID | ID Number | Issue Date (if any) | Expiration Date (if any) |
|---|---|---|---|
| | | | |

☐ Check if ownership should revert to Insured upon Owner and Contingent Owner's deaths.

COPY

## SECTION III - About the Beneficiary / Beneficiaries    For additional Beneficiaries, use Section IX - Additional Information.

☐ Check here if the Owner is the Primary Beneficiary.
For Primary or Contingent Beneficiaries who are NOT the Owner, complete the table below.

| Beneficiary Type | Name (First, Middle, Last) | Date of Birth | Relationship to Proposed Insured | Social Security Number (Optional) | Percentage of Proceeds (if not equal) |
|---|---|---|---|---|---|
| Primary | Jordan T. Breslow | ▮▮▮93 | Son | | 100 |
| ☐ Primary ☐ Contingent | | | | | |
| ☐ Primary ☐ Contingent | | | | | |

☐ Check here to include all living and future natural or adopted children of the Proposed Insured as Contingent Beneficiaries. (Name all living children above.)

▣ If a Custodian is acting on behalf of a minor Beneficiary listed above, please use **Co-Owner/Contingent Owner and UTMA Designations Supplement** form.

⚠ Federal law states that if someone with special needs has assets over $2,000, they may lose eligibility for government benefits.

## SECTION IV - About Proposed Coverage    Check the desired coverage(s).

| ☐ Adjustable Life | ☐ Variable Life ▣ | ☒ Whole Life | ☐ Term Life |
|---|---|---|---|
| Product Name | | Product Name **Life Paid-Up at Age 100** | Product Name |
| Face Amount* | | Face Amount* **$70,000** | Face Amount* |
| Riders and Details | | Riders and Details | Riders and Details |

| Adjustable Life column | Whole Life column | Term Life column |
|---|---|---|
| ☐ Coverage Continuation (UL only) | | |
| Disability Waiver: | ☐ Disability Waiver | Disability Waiver: |
| ☐ Specified Premium | Dividend Options: | ☐ Convertible   ☐ Non-Convertible |
| ☐ Monthly Deduction (VUL only) | ☒ Paid-Up Additions | |
| Death Benefit Option | ☐ Other, please specify: | |
| Definition of Life Insurance: | | |
| ☐ Guideline Premium Test | ☒ Automatic Premium Loan Requested | |
| ☐ Cash Value Accumulation Test | | |

Planned Premium
Year 1 _____
Years 2 to _____
Years _____ to _____ (UL only)

ⓘ For a full list of riders and options, please consult with your Producer.
**Note:** Some riders may require supplement forms to be completed.

▣ For Variable Life products, please complete the **Variable Life Supplement** form.
\* If Face Amount is equal to or exceeds $1,000,000, please complete the **Personal Financial Information** form.

**ADDITIONAL OPTIONS**

| One Time (Single) Payment Amount | 1035 Exchange Amount | Requested Policy Date | ☐ Save Age |
|---|---|---|---|

**POLICY OPTIONS**
☐ Alternate Policy: Product, Face Amount and Details _____
☐ Additional Policy: Product, Face Amount and Details _____
☒ Group Conversion Only
☐ Group Conversion Alternative    } ▣ Please complete the **Group Conversion Supplement** form for either choice.

ENB-7-16-PA                    1▮1▮2▮07▮4▮1007▮6▮7▮2▮14▮Y                    MET (04/18)  ef

COPY

## SECTION V - About Existing or Applied for Insurance

| | Proposed Insured | ☐Yes ☒No |
|---|---|---|
| Does the Proposed Insured or Owner have any existing or applied for life insurance or annuities with this or any other company? | Owner | ☐Yes ☒No |

If **YES**, please provide details of any existing or applied for **Life Insurance** on the **Proposed Insured** only.

| Company | Amount of Insurance | Year of Issue | Status | |
|---|---|---|---|---|
| | | | ☐Existing | ☐Applied For |
| | | | ☐Existing | ☐Applied For |
| | | | ☐Existing | ☐Applied For |
| | | | ☐Existing | ☐Applied For |

In connection with this application, has there been, or will there be with this or any other company any: surrender transaction; loan; withdrawal; lapse; reduction or redirection of premium/consideration; or change transaction (except conversions) involving an annuity or other life insurance?  ☐Yes ☒No

▣ If **YES**, complete **Replacement Questionnaire** AND any other state required replacement forms or 1035 exchange forms.

---

**If Proposed Insured is financially dependent on another individual, indicate individual providing support:**

☐Spouse  ☐Child  ☐Parent  ☐Other _____

Amount of insurance on individual providing support.  Existing Insurance _____  Insurance Applied For _____

If Proposed Insured is a minor, are all siblings equally insured?  ☐Yes  ☐No

If **NO**, please provide details: _____

---

## SECTION VI - About Payment Information

**PREMIUM PAYOR**

☒Proposed Insured  ☐Owner (If NOT the Proposed Insured.)  ☐Other (Complete the box below.)

| Other Premium Payor Name | Social Security or Tax ID Number | Relationship to Proposed Insured or Owner |
|---|---|---|

Reason this Person is the Payor

| Permanent Address | City | State | Zip |
|---|---|---|---|

**PAYMENT MODE** (Check the appropriate ONE.)

Billing Mode:  ☐Annual  ☐Semi-Annual  ☒Quarterly

☒Monthly Draft per Debit Authorization (See next page.)

☐Monthly  Draft per Existing Electronic Payment Number

Special Account:  ☐Government Allotment  ☐Salary Deduction  ☐List Bill

If Special Account, provide Employer Group Number (EGN) or List Bill Number

**INITIAL PAYMENT**

Amount Collected with Application

Method of Collection:

☒Initial Premium by Electronic Funds Transfer (Must be at least a monthly amount.)

☐Check (Must be at least 1/12 of an annual premium.)

**SOURCE OF CURRENT AND FUTURE PAYMENTS** (Check ALL that apply.)

☒Earned Income  ☐Mutual Fund/Brokerage Account  ☐Money Market Fund  ☐Savings  ☐Loans

☐Certificate of Deposit  ☐Use of Values in another Life Insurance/Annuity Contract  ☐Other _____

---

ENB-7-16-PA

1%1%2%07%4%10076%7%3%1%%2

MET (04/18)  eF

COPY

**DEBIT AUTHORIZATION**   ⚠ **Available only if the bank account holder is the Owner and/or Proposed Insured.**

📋 All others please complete the **Electronic Payment (EP) Account Agreement** form.

The undersigned ("I") hereby authorize the Company with whom I am completing this application to initiate debit entries through Metropolitan Life Insurance Company to the deposit account designated below, at the Financial Institution named below, using the Automated Clearing House. I authorize:

1. Monthly recurring debits; AND
2. Debits made from time to time, as I authorize.

This authorization is to remain in full force and effect until the Company has received written notification from me of its termination at such time and in such manner as to afford the Company and the Financial Institution a reasonable opportunity to act on it.

Monthly Debit Date:   ☐ Issue Date of the Policy

☐ Debit Date on the _____ of each month

Bank Account Type:   ☐ Checking   ☐ Savings

Bank Routing Number _____   Bank Account Number _____

Name of Financial Institution _____

BANK ROUTING NUMBER   BANK ACCOUNT NUMBER

ⓘ Note: Please attach a voided check or deposit slip to Section IX - Additional Information.

We cannot establish banking services from starter checks, cash management, brokerage, or mutual fund checks. We cannot establish banking services from foreign banks UNLESS the check is being paid in U.S. Dollars through a U.S. correspondent bank (the U.S. correspondent bank name must be on the check).

---

**SECTION VII - General Risk Questions**   Use Section IX - Additional Information if necessary.

1. Within the past three years has the Proposed Insured flown in a plane other than as a passenger on a commercial airline or does he or she have plans for such activity within the next year?   ☐ Yes ☐ No

📋 If **YES**, please complete a separate **Aviation Risk Supplement** form for the Proposed Insured.

2. Within the past three years has the Proposed Insured participated in or does he or she plan to participate in **any** of the following?   ☐ Yes ☐ No
   - Underwater sports - SCUBA diving, hard hat, skin diving, snorkeling or cave diving
   - Racing sports - motorcycle, auto or motor boat
   - Sky sports - skydiving, hang gliding, parachuting, ballooning, ultra lights, para sailing or para skiing
   - Rock ice or mouain climbing
   - Bungee jumping

📋 If **YES**, please complete a separate **Avocation Risk Supplement** form for the Proposed Insured.

3. Has the Proposed Insured **traveled** or **resided** outside the U.S. or Canada within the **past two years**; or does he or she plan to **travel** or **reside** outside the U.S or Canada within the **next two years**?   ☐ Yes ☐ No
   If **YES**, please provide details.

| Past | Future | Duration (weeks) | Cities and Countries | Purpose |
|------|--------|------------------|----------------------|---------|
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |

4. Has the Proposed Insured **EVER** used tobacco or nicotine products in any form (e.g., cigars cigarettes, cigarillos, pipes, chewing tobacco, nicotine patches, or nicotine gum)? If YES, please provide details.   ☐ Yes ☐ No

| Product(s) | Frequency / Amount | Date Last Used |
|------------|--------------------|----------------|
| | | |

ENB-7-16-PA            1%1%2%07%4%10076%7%4%14%~            MET (04/18)  eF

COPY

5. Has the Proposed Insured **EVER** had a driver's license suspended or revoked, been convicted of DUI or DWI, or in the last five years had any moving violations? If **YES**, please provide date(s) and violation(s).  ☐Yes ☐No

6. Has the Proposed Insured **EVER** had an application for life, disability income or health insurance declined, postponed, rated or modified or required an extra premium? If **YES**, please provide details.  ☐Yes ☐No

7. In the past 10 years, has the Proposed Insured been convicted of or pled Guilty or No Contest to a felony? If **YES**, list type of felony, state, and date of occurrence. _____  ☐Yes ☐No

8. Is the Proposed Insured actively at work performing the usual duties of his or her occupation? If **NO**, please provide details. _____  ☐Yes ☐No

### SECTION VIII - Personal Physician

☐ Check here if Proposed Insured does not have a personal physician.

Physician Name _____  Name of Practice or Clinic _____

Street Address _____  City _____  State ____  Zip ____

Phone Number _____  Date Last Consulted _____  Reason _____  Findings/Treatment Given/Medication Prescribed _____

### SECTION IX - Additional Information   If more space is needed, attach additional sheet(s).

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____



## Certification / Agreement / Disclosure

Was a sales illustration provided for the life insurance policy as applied for?  ☒Yes  ☐No
A. If **Yes**, please choose one of the following:

☒An illustration was signed and **matches the policy applied for**. It is included with this application.

☐An illustration was shown or provided but is **different from the policy applied for**. An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery.

☐The sale was made using an illustration with Accelerated Payment.

☐If illustration was **only shown on a computer screen**, check and complete the details in the box below.

> An illustration was displayed on a computer screen. The displayed illustration **matches the policy applied for** but no printed copy of the illustration was provided. An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery. The illustration on the screen included the following personal and policy information:
>
> 1. Gender (as illustrated)   ☐Male   ☐Female   ☐Unisex
> 2. Age   _____
> 3. Rating Class (e.g. Standard Non-smoker) _____   ☐Non-smoker   ☐Smoker
> 4. Product Name (e.g. GAUL) _____
> 5. Face Amount _____
> 6. Dividend Option (Whole Life only) _____

8. If **No**, please choose one of the following:

☐Producer certifies that a signed illustration is **not required** by law or the policy applied for is not illustrated in this state.

☐**No illustration conforming to the policy** as applied for was shown or provided prior to or at the time of this application. An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery.

### Agreement / Disclosure

I have read this application for life insurance including any amendments and supplements and to the best of my knowledge and belief, all statements are true and complete. I also agree that:

- My statements in this application and any amendment(s), paramedical/medical exam and supplement(s) are the basis of any policy issued.
- This application and any amendment(s), paramedical/medical exam, and supplement(s) to this application will be attached to and become part of the new policy.
- No information will be deemed to have been given to the Company unless it is stated in this application, paramedical/medical exam, amendment(s), or any supplement(s).
- Only the Company's President, Vice-President or Secretary may: (a) make or change any contract of insurance; (b) make a binding promise about insurance; or (c) change or waive any term of an application, receipt, or policy.
- **Except as stated in the Temporary Insurance Agreement and Receipt, no insurance will take effect until a policy is delivered to the Owner and the full first premium due is paid. It will only take effect at the time it is delivered if: (a) the condition of health of each person to be insured is the same as stated in the application; and (b) no person to be insured has received any medical advice or treatment from a medical practitioner since the date of the application.**
- If I have requested a rider that provides an acceleration of death benefit, I have received the appropriate disclosure form.
- I understand that paying my insurance premiums more frequently than annually may result in a higher yearly out-of-pocket cost or different cash values.
- **If I intend to replace existing insurance or annuities, I have so indicated in the appropriate section of the application.**
- **I have received the Company's Privacy Notice and the Life Insurance Buyer's Guide.**
- **If I was required to sign a Notice and Consent for HIV Testing, I have received a copy of that Notice.**

ENB-7-16-PA

1%1%2%07%4%1007%7%6%14%

6 of 7

MET (04/18)  eF

COPY

## Fraud Warnings

Any person who knowingly and with the intent to defraud any insurance company or any other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act which is a crime and subjects such person to criminal and civil penalties.

## Taxpayer Identification Number Certification

Under penalties of perjury, I, the Owner, certify that:
- The number shown in this application is my correct taxpayer identification number, and I am not subject to backup withholding because:
  (a) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends; **or**
  (b) the IRS has notified me that I am not subject to backup withholding.
     (If you have been notified by the IRS that you are currently subject to backup withholding because of under reporting interest or dividends on your tax return, you must cross out and initial this item.)
- I am a U.S. citizen or a U.S. resident alien for tax purposes.
  (If you are not a U.S. citizen or a U.S. resident alien for tax purposes, please cross out this certification and complete form W-8BEN).

  ⓘ **Please note:** The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

## Signatures    If not witnessing all signatures, witness should initial next to signature being witnessed and sign below.

| Signature(s) of all Proposed Insured(s) | Date | Signed at City, State |
|---|---|---|
| ▶ _D. B_____ | 5/30/2019 | Philadelphia, Pa. |
| ▶ _____ | | |
| (age 18 or over) | | |

📝 Please complete the **Additional Insureds Supplement** or **Child Rider Supplement** form(s) if applicable.

| Signature(s) of all Owner(s) (If **NOT** the Proposed Insured.) | Date | Signed at City, State |
|---|---|---|
| ▶ _____ | | |
| ▶ _____ | | |
| (age 18 or over) | | |

ⓘ If the Owner is a firm or corporation, include Officer's title with signature.

📝 If Co-Owner or Custodian, please complete the **Co-Owner/Contingent Owner and UTMA Designations Supplement** form.

| Signature of Parent or Guardian | Date | Signed at City, State |
|---|---|---|
| ▶ _____ | | |
| (If Owner or Proposed Insured is under 18, sign here. If not sign above.) | | |

Witness to Signatures
Licensed Producer

▶ _____

Print Name of Producer
**Anthony Maiuolo**

1814230784810076874731483

COPY

# MetLife®

## Group Conversion Supplement

## Metropolitan Life Insurance Company

**This supplement will be attached to and become part of the application with which it is used.**

| Proposed Insured - First Name | Middle Name | Last Name |
|---|---|---|
| Donna | A | Breslow |

### SECTION I · Group Policy Details

Group Policy Type:  ☒ Corporate Group     ☐ Servicemember's/Veteran's     ☐ Federal Employees Group

Group Policy Number _____     Certificate, Serial, SGLI/VGLI/FEGLI Number (if applicable) _____     Separation Date _____

Was the Proposed Insured totally disabled on the date of the separation from employment?     ☐ Yes  ☒ No

Was inquiry or request for conversion made prior to the date this Application for Life Insurance ("Application") was completed?     ☐ Yes  ☒ No

If **YES**, indicate the date the inquiry or request was made. _____

### SECTION II · Group Conversion Only

☒ Group Conversion Only

- Complete the entire Application for the Proposed Insured only.
- Complete the Certification / Agreement / Disclosure page and include the appropriate signatures.
- The Employer's Group Conversion Notice must be submitted with the Application.

### SECTION III · New Business Policy

☐ New Business Policy with Group Conversion as an alternative

- Complete the entire Application.
- Provide coverage details in Section IV of the Application.
- Complete the Certification / Agreement / Disclosure page and include the appropriate signatures.

Any person who knowingly and with intent to defraud any insurance company or any other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act which is a crime and subjects such person to criminal and civil penalties.

The above answers are true and complete to the best of my knowledge and belief.

| Signature of Proposed Insured | Signed at City, State | Date |
|---|---|---|
| ▶ _[signature]_ | Philadelphia, Pa | 5/30/2014 |

| Signature of Owner | Signed at City, State | Date |
|---|---|---|
| ▶ | | |

MGC-33-07-PA                   1%1%2%07%4%10178%7%1%14%–                   1 of 1

                                                                           (07/07)   eF



## Notice

When you write to us, please give us your name, address and policy number. Please notify us promptly of any changes. We will write to you at your last known address.

Checks, drafts or money orders may be drawn to the order of Metropolitan Life (or "MetLife"). They are received subject to the condition that they may be handled for collection in accordance with the practice of the collecting bank or banks. If we do not receive the full amount of any check, draft or money order, it will not constitute payment. All payments are to be made in U.S. currency.

**Voting for Directors**  Our Board of Directors is elected by the policyholders. For details on how to vote, write to our Secretary.

> Metropolitan Life Insurance Company
> 200 Park Avenue
> New York, New York 10166

Countersigned and Delivered _____ By _____

## Table of Contents

| | Page | | Page | | Page |
|---|---|---|---|---|---|
| **Policy Specifications** | 3 | **Premiums** | 7 | **General Provisions** | 9 |
| | | Premium Payment | 7 | The Contract | 9 |
| **Table of Values** | 4 | Grace Period | 7 | Limitation on Sales | |
| | | Automatic Policy Loan | 7 | Representative's Authority | 9 |
| **Understanding This Policy** | 5 | Non-Payment of Premiums | 7 | Incontestability | 9 |
| | | Computation of Values | 8 | Interest Rate | 9 |
| **Payment When Insured Dies** | 5 | Reinstatement | 8 | Age and Sex | 9 |
| **Payment During Insured's Lifetime** | 5 | | | **Exclusion** | 9 |
| Dividends | 5 | | | Suicide | 9 |
| Cash Value | 6 | **Ownership and Beneficiary** | 9 | | |
| Guaranteed Cash Value | 6 | Owner | 9 | **Methods of Payment** | 11 |
| Policy Loan | 6 | Change of Ownership | 9 | Choice of Payment Plans | 11 |
| Loan Repayment | 6 | Beneficiary | 9 | Limitations | 11 |
| Policy Termination | 7 | How to Change the Owner | | Payment Plan Rates | 11 |
| Deferment | 7 | or the Beneficiary | 9 | Minimum Payments under | |
| | | Collateral Assignment | 9 | Payment Plans | 12 |

> We have intentionally left pages 2 and 10 blank.

Any riders for additional benefits follow page 12.

## Life Paid-Up At 100 Policy

Life insurance payable when the insured dies.

Premiums payable for a stated period.

Annual Dividends

Ex B

4pss

**MetLife**

This document is incomplete without the Disclaimers Page.

# Product Detail Report

Account#: ▮▮2032 A as of: 04/23/2020

*Created For:*

**Donna Breslow**

*Created On:*

**04/23/2020**

*Created For:*

04/23/2020

2020-14359-0000   9/2/2020 12:14 PM   # 12844724
Rcpt#2020-13-00212  Fee:$290.00  Complaint Civil Action
Exhibit B (Public)
MontCo Prothonotary

© 2019 MetLife Services and Solutions, LLC

Client Name: Donna Breslow

This document is incomplete without the Disclaimers Page.

Account Number: 2032 A

| Policy Number: | Policy Suffix | Policy Information | Issue Date: | Status: | Amount of Insurance: |
|---|---|---|---|---|---|
| 2002 | A | Whole Life | 11/01/2019 | Unplaced Issue-Prem Pay | $348,000.00 |

## Financial Information

### Financial Details

| | |
|---|---|
| Death Benefit Amount: | $348,000.00 |
| Death Benefit As Of Date: | 11/01/2019 |

### Dividends

| | |
|---|---|
| Loan Value: | Paid Up Addtl Ins. |
| Last Dividend Credited Amount: | $0.00 — Additional Insurance (AI) Balance: |
| Last Dividend Credited Year: | N/A |

### Billing and Payment Summary

| | | |
|---|---|---|
| Scheduled Premium Amount: | $3,977.72 Due 11/01/2019 | Premium Frequency: Quarterly |
| Next Premium Due Date: | 11/01/2019 | |
| Gross Billed Premium: | N/A | |
| Premium Base & non-PUAR Rider: | $3,977.72 | |
| Total Premium: | $3,977.72 | |
| Premium Paid to Date: | 11/01/2019 | |

Paying the insurance premiums more frequently than annually may result in a higher yearly out-of-pocket cost or different cash values.

### Contact Us

For Customer Support, call 1-800-638-5000

For help with policy changes and other policy servicing questions, contact your financial services representative.

| | |
|---|---|
| Name: | ANTHONY L MARIOLO |
| Title: | BROKER |
| Representative Number: | 0711-250-1 |
| Office Phone Number: | (999)-999-9999 |
| Office Name: | CRUMP LIFE INSURAN |
| Office Address: | 4135 NORTH FRONT ST, HARRISBURG PA 17110 |

04/23/2020

© 2019 MetLife Services and Solutions, LLC1

Page 2 of 4

This document is incomplete without the Disclaimers Page.

## General Information

### Owner Information

| | | |
|---|---|---|
| Owner Name: | DONNA A BRESLOW | |
| Social Security Number: | | Date of Birth: | 1961 |
| Phone Number: | (215) 206-3562 | |
| | | Address: | 314 S HENDERSON RD UNIT G KING OF PRUSSIA, PA 19406 |

### Insured Information

| | | |
|---|---|---|
| Insured Name: | DONNA A BRESLOW | |
| Social Security Number: | | Date of Birth: | 1961 |
| Address: | 314 S HENDERSON RD UNIT G KING OF PRUSSIA, PA 19406 | Risk Classification: |

### Beneficiary Information

## Primary Beneficiary Information

| Primary Beneficiary | Percentage | |
|---|---|---|
| JORDAN J BRESLOW | 0 | Irrevocable Beneficiary | Social Security Number | Date of Birth: |
| | | This beneficiary is not irrevocable. | N/A | 1993 |

© 2019 MetLife Services and Solutions, LLC1

Client Name: Donna Breslow

This document is incomplete without the Disclaimers Page.

Account Number: ████ 2032 A

## Disclaimers

**Important Information**

Paying the insurance premiums more frequently than annually may result in a higher yearly out-of-pocket cost or different cash values.

Disclaimers

The account balances, values and transaction details presented here are derived from our contract administrative system; they are not a legal statement of your account. Please refer to your confirmations and account statements as records of your account. Investments will fluctuate with changes in the securities markets and, therefore, may be worth more or less when redeemed.

MetLife's life insurance products are issued by Metropolitan Life Insurance Company or its affiliated insurance companies; variable life insurance products are distributed by MetLife Investors Distribution Company.

This report is provided for general informational purposes only, and the values contained in this report are simply intended as a general guide. Values are presented as available on the date of the report. The contents of this report should not be relied upon to compute taxes, for lending, or for legal purposes. Please use the individual statements you receive directly from the financial institutions to verify the activity and value of your accounts, and consult a qualified investment, tax or legal professional for advice.

© 2019 MetLife Services and Solutions, LLC1

© 2019 MetLife Services and Solutions, LLC1



# Department of
# Financial Services

**ANDREW M. CUOMO**
Governor

**LINDA A. LACEWELL**
Superintendent

Donna Breslou
314 S. Henderson Road Unit 6103
King Of Prussia, PA 19406

March 17, 2020

**RE:** Dept. File #: CSB-2020-01348018
Your Complaint Against: Metropolitan Life Insurance Company

Dear Sir/Madam:

This letter refers to the complaint you filed with this Department.

In order to investigate your complaint, we require the following additional information:

_____ A detailed explanation of your complaint.

_____ The name of the licensed insurance company
that underwrites the policy.

_____ Member ID number.

_____ The name of the patient.

_____ Policy/claim number.

_X___ OTHER: Please provide the state the policy was signed in.

Since we cannot begin our investigation until we receive the above requested information, please provide your response as soon as possible.

## PLEASE RETURN THIS LETTER AND ANY ENCLOSED MATERIAL WITH YOUR RESPONSE.

We will not take any further action until we receive this information.

Sincerely,

CONSUMERS ASSISTANCE UNIT
PROCESSING UNIT

212-480-6282 (Fax)



2020-14359-0000  9/2/2020 12:14 PM  # 12844725
Rcpt#2020-13-00212  Fee:$290.00  Complaint Civil Action
Exhibit C (Public)
MontCo Prothonotary

ONE STATE STREET PLAZA, NEW YORK NY 10004| 1 COMMERCE PLAZA, ALBANY NY 12257 | WWW.DFS.NY.GOV

4 P S

# MetLife

*This document is incomplete without the Disclaimers Page.*

# Product Detail Report

**Account# ▉▉▉ 0347  A as of: 04/23/2020**

*Created For:*
**Donna Breslow**

*Created On:*
**04/23/2020**

04/23/2020



2020-14359-0000  9/2/2020 12:14 PM  # 12844726
Rcpt#2020-13-00212  Fee:$290.00  Complaint Civil Action
Exhibit D (Public)
MontCo Prothonotary

© 2019 MetLife Services and Solutions, LLC1

Case 2:20-cv-04896 Document 1 Filed 10/05/20 Page 41 of 68

Client Name:Donna Breslow

This document is incomplete without the Disclaimers Page.

Account Number: 0347 A

| Policy Number: | Policy Suffix | Policy Information | Issue Date: | Status: | Amount of Insurance: |
|---|---|---|---|---|---|
| 0347 | A | Whole Life | 11/01/2019 | Death Claim | $70,781.00 |
| | | | | Paid-Prem Pay | |

## Financial Information

Death Benefit As Of Date:

## Financial Details

| Loan Value: | Paid Up Addtl Ins: | |
|---|---|---|
| Last Dividend Credited Amount: | $0.00 | |
| Last Dividend Credited Year: | N/A | |

## Dividends

Additional Insurance (AI) Balance:

| Scheduled Premium Amount: | $978.37 Due 11/01/2021 | Premium Frequency: | Quarterly |
|---|---|---|---|
| Next Premium Due Date: | 11/01/2021 | | |
| Gross Billed Premium: | N/A | | |
| Premium Base & non-PUAR Rider: | $978.37 | | |
| Total Premium: | $978.37 | | |
| Premium Paid to Date: | 11/01/2021 | | |

## Billing and Payment Summary

Paying the insurance premiums more frequently than annually may result in a higher yearly out-of-pocket cost or different cash values.

## Contact Us

For Customer Support, call 1-800-638-5000

For help with policy changes and other policy servicing questions, contact your financial services representative.

| Name: | ANTHONY I MAIFO'O |
|---|---|
| Title: | BROKER |
| Representative Number: | 0784-2584-1 |
| Office Phone Number | (999)-999-9999 |
| Office Name | CRUMP LIFE INSURAN |
| Office Address: | 4135 NORTH FRONT ST HARRISBURG PA |
| | 17110 |

04/23/2020

© 2019 MetLife Services and Solutions, LLC1

Client Name: Donna Breslow

This document is incomplete without the Disclaimers Page.

Account Number: 0347 A

## General Information

### Owner Information

| | |
|---|---|
| Owner Name: | DONNA A BRESLOW | Date of Birth: | 1961 |
| Social Security Number: | | | |
| Phone Number: | (215) 206-3562 | Address: | 112 WINDSOR AVE |
| | | | ELKINS PARK, PA 19027 |

### Insured Information

| | |
|---|---|
| Insured Name: | DONNA A BRESLOW | Date of Birth: | 1961 |
| Social Security Number: | | Risk Classification: | |
| Address: | 112 WINDSOR AVE | | |
| | ELKINS PARK, PA 19027 | | |

### Beneficiary Information

## Primary Beneficiary Information

| Primary Beneficiary | Percentage | Irrevocable Beneficiary | Social Security Number: | Date of Birth: |
|---|---|---|---|---|
| JORDAN T BRESLOW | 0 | This beneficiary is not irrevocable | N A | 1993 |

04/23/2020

© 2019 MetLife Services and Solutions, LLC |

# Disclaimers

**Important Information**

Paying the insurance premiums more frequently than annually may result in a higher yearly out-of-pocket cost or different cash values.

Disclaimers

The account balances, values and transaction details presented here are derived from our contract administrative system; they are not a legal statement of your account. Please refer to your confirmations and account statements as records of your account. Investments will fluctuate with changes in the securities markets and, therefore, may be worth more or less when redeemed.

MetLife's life insurance products are issued by Metropolitan Life Insurance Company, or its affiliated insurance companies; variable life insurance products are distributed by MetLife Investors Distribution Company.

This report is provided for general informational purposes only, and the values contained in this report are simply intended as a general guide. Values are presented as available on the date of the report. The contents of this report should not be relied upon to compute taxes, for lending, or for legal purposes. Please use the individual statements you receive directly from the financial institutions to verify the activity and value of your accounts, and consult a qualified investment, tax or legal professional for advice.

© 2019 MetLife Services and Solutions, LLC1

04/23/2020

© 2019 MetLife Services and Solutions, LLC1

Page 4 of 4